Brett BARBRE, Appellant (Plaintiff Below),

v.

**INDIANAPOLIS WATER COMPANY and Shorewood Corporation, Appellees (Defendants Below).**

No. 2–1178a374.

Court of Appeals of Indiana, Second District.

Feb. 21, 1980.

Rehearing Denied May 21, 1980.

⟜ 181(2)

Dean E. Richards, Richards, Bennett, Bravard & Bibbins, Indianapolis, for appellant.

William C. Moore, Steckbeck, Moore, Cohen & O'Dell, Indianapolis, for appellee, Indianapolis Water Co.

Hugh Watson, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellee, Shorewood Corp.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Plaintiff-appellant Brett Barbre (Brett) appeals a summary judgment entered against him claiming that because there were material issues of fact involved in the controversy the trial court erred in granting summary judgment.

We affirm.

## FACTS

The facts [1] necessary to our disposition of this appeal are:

On July 3, 1975, Brett and five other companions planned a swimming expedition and traveled from their home in Anderson, Indiana, to Morse Reservoir, near Cicero in Hamilton County. Brett was 17 at this time and had completed his junior year of high school. He testified in his deposition that this was his first visit to this particular area of Morse Reservoir, the place where he and his friends selected for their swim.

As Brett walked towards the lake he saw no signs prohibiting swimming or trespassing nor any fences or wires constructed to keep people out. He did see other cars parked nearby and observed people swimming in the lake.

On the bank of the reservoir a ladder and rope apparatus had been constructed allowing swimmers to swing from the rope and drop into the water. Brett swung on this rope several times without mishap. In describing the water, Brett stated he realized the water was deeper towards the center of the reservoir and shallower along the banks.

After swimming for approximately one-half hour, Brett decided to dive into the water from a cliff (he had previously seen one other person dive into the water from a different location along the shore). Unfortunately he dove into shallow water and struck his head on the bottom of the reservoir. He remained conscious as several friends pulled him out of the water and laid him on the shore. His statement was that after he hit the bottom of the reservoir he had no feeling below his armpits.

As a result of this injury, Brett became a quadriplegic and spent many months in several hospitals.

On March 19, 1976, Brett filed a complaint against the Indianapolis Water Co. (Water Co.) in Hamilton Superior Court and on May 6, 1976, was allowed to amend his complaint to add Shorewood Corporation (Shorewood) as an additional defendant.[2] The complaint alleged that the negligence of either the Water Co. or Shorewood, or both, was the proximate cause of his injury.

The trial court entered summary judgment for both Water Co. and Shorewood.

## ISSUES

Brett presents one issue for our consideration: [3]

---

1. Extensive pretrial discovery was conducted—motions, memoranda, affidavits, answers to interrogatories, and depositions.

2. Upon investigation after the accident, Brett discovered that defendant-appellee Water Co. owned the lake itself and defendant-appellee Shorewood owned the land surrounding the lake.

3. Pursuant to Indiana Rules of Procedure, Trial Rule 59(G), Brett's second issue, failure of the trial court to make findings, is waived; he did not include this issue in his motion to correct errors.

Were there genuine issues of material fact thereby rendering granting of summary judgment improper?

## DECISION

*PARTIES' CONTENTIONS*—Brett contends there were material issues of fact as to the negligence of the defendants.

The Water Co. and Shorewood respond that they owed no duty to Brett as a trespasser (or at best a licensee) and therefore Brett took the conditions of the land as he found them.

*CONCLUSION*—Because the Water Co. and Shorewood owed no duty to Brett, there were no *material* issues of fact in controversy. So summary judgment was proper.

█ The function of a summary judgment proceeding is to expedite the disposition of disputes in which there is no genuine issue of fact *material* to the claim involved and a party is entitled to judgment as a matter of law. Trial Rule 56(C); *North Miami Consolidated School District v. State ex rel. Manchester Community Schools* (1973), 261 Ind. 17, 300 N.E.2d 59; *Central Realty, Inc. v. Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N.E.2d 383; *Tekulve v. Turner* (1979), Ind.App., 391 N.E.2d 673. Because the effect of this procedure is to deprive the non-moving party of the right to a trial, strict standards have been established which a moving party must meet in order to prevail.

The burden is on the proponent to establish that no genuine issue as to any material fact exists. *Wozniczka v. McKean* (1969), 144 Ind. App. 471, 247 N.E.2d 215; *Apple v. Apple* (1971), 149 Ind.App. 529, 274 N.E.2d 402. Accordingly, for purposes of determining whether to grant the motion: (a) facts set forth by the opponents' affidavits will be taken as true; (b) the depositions, admissions, etc. are to be liberally construed in favor of the opponent; and (c) any doubt as to the existence of a genuine issue as to a material fact must be resolved against the proponent of the motion. *Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688;

*Ross v. Farmers Insurance Exchange* (1971), 150 Ind.App. 428, 277 N.E.2d 29. *Podgorny v. Great Central Insurance Co.* (1974), 160 Ind.App. 244, 254, 311 N.E.2d 640, 648. *See also Hale v. Peabody Coal Co.* (1976), Ind.App., 343 N.E.2d 316; *Letson v. Lowmaster* (1976), Ind.App., 341 N.E.2d 785.

█ Even in cases in which the trial judge believes that the proponent of a motion for summary judgment is likely to prevail at trial, motion for summary judgment is inappropriate if any genuine issue of fact exists. *Doe v. Barnett* (1969), 145 Ind.App. 542, 251 N.E.2d 688.

And what is a material issue of fact? It is one which may be dispositive of the case. In almost every case there are factual issues upon which the parties may disagree; a summary judgment is proper only if the resolution of these factual issues would have no bearing upon the resolution of the legal issues and the ultimate determination of the case. *Brandon v. State* (1976), 264 Ind. 177, 340 N.E.2d 756; *Stuteville v. Downing* (1979), Ind.App., 391 N.E.2d 629; *Hayes v. Second National Bank of Richmond* (1978), Ind.App., 375 N.E.2d 647.

█ The facts which Brett claims are in dispute, e. g., whether the defendants knew or should have known that there was swimming in this area, whether there were fences or signs to deter swimmers, whether Brett or the defendants had acted in a reasonable fashion, go to the issue of negligence. So we must determine if the defendants, or either of them, owed a duty to Brett. There can be no negligence without breach of a duty owed to the plaintiff.

█ A person entering upon the land of another comes on to the land either as an invitee, a licensee, or a trespasser. The status of the person on the land determines the duty owed by the landowner to him. *Fort Wayne National Bank v. Doctor* (1971), 149 Ind.App. 365, 272 N.E.2d 876; *Olson v. Kushner* (1965), 138 Ind.App. 73, 211 N.E.2d 620 (overruled on other grounds in *Fort Wayne National Bank v. Doctor*,

*supra* ); *Standard Oil Co. v. Scoville* (1961), 132 Ind.App. 521, 175 N.E.2d 711.

■ The facts most favorable to Brett show unequivocably that he was not an invitee. An invitee is a person who goes on to the land of another at the express or implied invitation of the owner or occupant either to transact business or for the mutual benefit of the invitee and the owner or occupant. *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821; *Mullins v. Easton* (1978), Ind.App., 376 N.E.2d 1178; *Verplank v. Commercial Bank* (1969), 145 Ind.App. 324, 251 N.E.2d 52.

But is Brett a licensee or a trespasser? Even though the admitted facts do not conclusively establish Brett's legal status upon the land, the resolution of this factual question is superfluous because either as licensee or trespasser no duty was owed him. *Neal v. Home Builders, Inc.* (1953), 232 Ind. 160, 111 N.E.2d 280.

■ A licensee is one who enters the premises of another for his own convenience, curiosity or entertainment. He takes the land of the owner as he finds it. *Xaver v. Blazak* (1979), Ind.App., 391 N.E.2d 653; *Pierce v. Walters* (1972), 152 Ind.App. 321, 283 N.E.2d 560; *Fort Wayne National Bank v. Doctor, supra*. The owner of the land is not liable for any defects in the condition of the land and he does not have the duty to maintain his premises in a safe condition. *Fort Wayne National Bank v. Doctor, supra* ; *Olson v. Kushner, supra* ; *Midwest Oil Co. v. Storey* (1961), 134 Ind. App. 137, 178 N.E.2d 468.

The only affirmative duty a land owner owes to a licensee is to refrain from willfully or wantonly injuring him or acting in a way which would increase the licensee's peril. A showing by the licensee of mere negligence on the part of the land owner will not be enough to insure him recovery. *Neal v. Home Builders, Inc., supra* ; *Brown v. Kujawa* (1968), 142 Ind.App. 310, 234 N.E.2d 509; *Fort Wayne National Bank v. Doctor, supra.*

■ The unfortunate accident which befell Brett was not caused by any willful or wanton act of Shorewood or the Water Co. Although man-made, Morse Reservoir reflected the conditions of a natural lake. Inherent in the conditions of bodies of water are the dangers of varying depths, sharp drop offs and shallow shorelines. Because Brett testified that he was a normal 17 year old at the time of the accident, he is deemed as a matter of law, to be familiar with these dangers. Indiana case law has clearly established that even young children are presumed to understand and appreciate the dangers common to bodies of water. *Harness v. Church Members Life Insurance Co.* (1961), 241 Ind. 672, 175 N.E.2d 132; *Plotzki v. Standard Oil Company* (1950), 228 Ind. 518, 92 N.E.2d 632; *City of Evansville v. Blue* (1937), 212 Ind. 130, 8 N.E.2d 224; *Lockridge v. Standard Oil Co.* (1954), 124 Ind.App. 257, 114 N.E.2d 807.

Our decision here is not changed or influenced by the well-recognized doctrine of attractive nuisance or the less settled principle that a land owner owes a higher duty to a child licensee than to an adult licensee. These cases deal with infants or children of tender years and do not contemplate application to a 17 year old, one year short of graduation from high school. Brett was sui juris and the duty owed to him was that of a reasonable adult. *See, e. g., Pier v. Schultz* (1962), 243 Ind. 200, 182 N.E.2d 255; *Harness v. Church Members Life Insurance Co., supra; Neal v. Home Builders, Inc., supra; Plotzki v. Standard Oil Co., supra; Swanson v. Shroat* (1976), Ind.App., 345 N.E.2d 872; *Chicago Railroad v. Sagala* (1966), 140 Ind.App. 650, 221 N.E.2d 371; *Anderson v. Reith-Riley Construction Co.* (1942), 112 Ind.App. 170, 44 N.E.2d 184.

And so it becomes apparent from the material facts not in controversy that the defendants as landowners did not owe Brett (as a licensee or trespasser) a duty as a matter of law, and the facts in controversy are not material to resolution of the ultimate question of landowner liability. In this state it has long been the law that a showing by a licensee (or a trespasser) of defects in the land or negligence on the owner's part does not entitle him to recov-

ery. *Neal v. Home Builders, Inc., supra; Woodruff v. Bowen* (1893), 136 Ind. 431, 34 N.E. 1113; *Fort Wayne National Bank v. Doctor, supra.*

Thus we are compelled to affirm the summary judgment.

Affirmed.

NEAL, J., concurs.

SULLIVAN, J., concurs in result with opinion.

SULLIVAN, Judge, concurring.

To the extent that this Court purports to hold that a landowner owes *no* duty to a licensee, it is in error. A licensee is owed a duty by a landowner to exercise reasonable care under the circumstances. The conduct, or abstention from conduct, which is necessary to measure up to that duty, varies with the circumstances. This fact, however, does not alter the nature of the duty owed. *See Swanson v. Shroat* (2d Dist. 1976) Ind.App., 345 N.E.2d 872.

For this reason, I concur only in the result.

**Warren W. WYNEKEN, Appellant-Claimant,**

v.

**Wayne LONG, Guardian of Ernest C. Byroade, Incompetent, Appellee.**

**No. 3–579A123.**

Court of Appeals of Indiana, Third District.

Feb. 21, 1980.

Rehearing Denied March 27, 1980.

Attorney filed complaint against guardian for incompetent to recover payment for legal services rendered to the incompetent. The Superior Court, Allen County, Alfred W. Moellering, J., denied the claim, and attorney appealed. The Court of Appeals, Staton, J., held that attorney could not recover payment for legal services rendered to an incompetent, where attorney was aware that guardianship had been established for an incompetent but performed legal services for incompetent without first seeking approval of guardian, attorney could not recover for the services, since the services were not rendered for the purpose of terminating guardianship, there was no express contract to pay for the services, and the services rendered were not "necessary" because they did not involve matters of such exigence that guardian approval could not have been obtained before services were rendered and because most of the services were rendered after attorney from legal aid staff had entered an appearance for the incompetent.

Affirmed.

Garrard, P. J., filed concurring opinion.

**1. Guardian and Ward** ⟳25

Attorney may recover the value of services rendered in an action to terminate a guardianship. IC 29–1–18–48 (1976 Ed.).

**2. Mental Health** ⟳372, 375

Although the law will not enforce an express contract against an incompetent, the law will allow recovery against incompetent's estate for reasonable value of necessary services rendered at request of the incompetent.

**3. Mental Health** ⟳377

Where attorney was aware that guardianship had been established for an incompetent but performed legal services for incompetent without first seeking approval of guardian, attorney could not recover for the services, since the services were not rendered for the purpose of terminating the guardianship, there was no express contract to pay for the services, and the services rendered were not "necessary" because they did not involve matters of such exigence that guardian approval could not have been obtained before services were rendered and

because most of the services were rendered after attorney from legal aid staff had entered an appearance for the incompetent.

---

Paul J. Sauerteig, Fort Wayne, for appellant-claimant.

Benton E. Gates, Jr., Gates and Gates, Columbia City, for appellee.

STATON, Judge.

Warren Wyneken filed a claim against Wayne Long, as guardian for Ernest Byroade, to recover payment for legal services rendered to Byroade. The trial court denied the claim, from which Wyneken appeals.

We affirm.

On February 20, 1975, Long was appointed guardian of the person and of the estate of Byroade. Byroade had been declared incompetent because of his age and physical and mental infirmity. Wyneken was aware that a guardianship had been established. Nevertheless, without first seeking the approval of the guardian, Wyneken expended approximately sixteen hours performing legal services for Byroade at Byroade's request. Most of the services were performed after an attorney from a legal aid staff had entered an appearance for Byroade. Long refused to compensate Wyneken for those services. The trial court agreed that Wyneken was not entitled to compensation.

[1] An attorney may recover the value of services rendered in an action to terminate a guardianship. Recompense in such situations is predicated upon IC 1971, 29–1–18–48 (Burns Code Ed.), which provides:

"Petition for adjudication of competency.—The ward or any person may file a petition on behalf of the ward, to have the ward adjudicated competent. If the court shall determine that the ward is still incompetent, no person shall file a new petition to have the ward adjudicated competent within a period of six [6] months. If the court shall determine that the ward is competent, or, if still incompetent, that the proceeding was brought in good faith, the ward shall pay the expenses of such proceeding, otherwise the court shall give judgment therefor against the person filing such petition . . . .",

and upon our conclusion in *Guardianship of Carrico v. Bennett* (1974), 162 Ind.App. 330, 319 N.E.2d 625, that the term "expenses" encompasses reasonable attorneys' fees incurred in maintaining the proceeding. Wyneken's services, however, were not rendered for the purpose of terminating the guardianship. Accordingly, he cannot predicate his theory of recovery on IC 1971, 29–1–18–48.

And, even though the services were performed at Byroade's request, Wyneken cannot recover on the theory that there was an express contract to pay for the services. IC 1971, 29–1–18–41, Ind.Ann.Stat. § 8–141 (Burns Code Ed.) provides that contracts entered into by persons previously adjudged incompetent are void.

[2] Although the law will not enforce an express contract against an incompetent, the law will allow a recovery against the incompetent's estate for the reasonable value of necessary services rendered at the request of the incompetent. *Rautenkranz v. Plummer* (1921), 75 Ind.App. 269, 130 N.E. 435. The question we must resolve, then, is whether the services rendered by Wyneken constituted "necessary" services. We conclude that they did not.

[3] The services rendered by Wyneken did not challenge the existence or the propriety of the guardianship, nor did they involve matters of such exigence that guardian approval could not have been obtained before the services were rendered. Furthermore, most of Wyneken's services were rendered after an attorney from a legal aid staff had entered an appearance for Byroade. Thus, the services which Wyneken sought to perform were already available to Byroade and the rendering of those services by Wyneken was not "necessary." *See Mitchell v. Campbell and Fetter Bank* (1964), 135 Ind.App. 523, 195 N.E.2d 489.

The trial court properly denied the claim.

HOFFMAN, J., concurs.

GARRARD, P. J., concurs with opinion.

GARRARD, Presiding Judge, concurring.

The majority has stated the law applicable to Wyneken's claim. The evidence was not "without conflict leading inescapably to the conclusion contrary to that reached by the court." *See, e. g., Malo v. Bowlers Country Club, Inc.* (1972), 152 Ind.App. 413, 283 N.E.2d 806, 807. Therefore, I concur in affirming the judgment.