FORT WAYNE NATIONAL BANK, ADMINISTRATOR *v.*
BERYL DOCTOR.

[No. 1269 A 247.   Filed September 13, 1971.   Rehearing denied October
15, 1971.   Transfer denied March 30, 1972.]

*William F. McNagny, Phil M. McNagny, Jr., Robert Thompson, Barrett, Barrett & McNagny,* of Fort Wayne, *Gates, Gates & McNagny,* of counsel, of Columbia City, for appellant.

*Arthur W. Parry, John H. Krueckeberg, Parry, Krueckeberg, Lee & Duemling,* of counsel, of Fort Wayne, for appellee.

BUCHANAN, J.—*STATEMENT OF THE CASE AND FACTS*—This appeal concerns an action for damages for wrongful death arising out of a fatal fall down a basement stairs by a daughter-in-law while visiting in the home of her mother-in-law.

The Doctor family gathered at the home of the Appellee-Defendant mother-in-law, Mrs. Beryl Doctor (Mother Beryl) to celebrate the birthday of her son's wife, Maria Doctor (Maria).

Returning from church, the Doctor family enjoyed the noon meal in the recreation room which was located in the basement of Mother Beryl's home. She and Maria shared the work of preparing the food in the kitchen upstairs, and each of them carried the food down the stairs to the recreation room in the basement. The noon meal was held without incident.

In the evening, Mother Beryl asked her son, Lawrence Doctor, if they should eat the evening meal in the basement recreation room. He affirmed this idea. Accordingly, the two women started the necessary preparations.

Maria Doctor than began a trip down the stairs to the basement carrying a platter of food. She was wearing high heels. Shortly after she began the descent, a loud noise was heard. Going to the head of the stairs, Mother Beryl saw Maria lying

on the floor between the stairs and the entrance to the recreation room with a platter of food on the floor beside her.

The basement stairs were lit by an unprotected light bulb which shone in the face of one descending the stairs. The four top steps were carpeted while the lower steps were painted and not carpeted.

Maria had on previous occasions done her washing in this basement.

Investigation indicated that Maria fell and struck her head against a solid surface causing the injuries from which she died on the 7th day of February, 1963.

The Plaintiff-Appellant Fort Wayne National Bank (the Bank) was appointed Administrator of Maria's Estate, and now seeks damages from Mother Beryl for the benefit of son Lawrence and her grandchildren.

The Complaint alleged certain defects: improper lighting in that an unprotected bulb shone in the face of the one descending the stairs; a confusing change of surface in that the top four steps were carpeted while the lower steps were not; the lower steps were painted and slippery; and that Mother Beryl failed to warn Maria of the danger on the stairs.

Mother Beryl's Answer denied any negligence on her part and alleged Maria voluntarily incurred the risk of injury to herself in the use of the stairway by reason of the fact that she had been in the mother's home and made use of the stairs on previous occasions as well as on the day in question.

This case has a history. It was previously tried with a jury returning a verdict for $38,000. At this prior trial in which Mother Beryl was the defendant, she moved for a directed verdict on the grounds that Maria was a social guest at her residence at the time of the fatal injury and that, as a matter of law, the facts introduced showed circumstances under which defendant had no duty of care to Maria. This motion was overruled and judgment entered on the $38,000 verdict. Mother

Beryl then appealed to this court, listing two specifications of error which are relevant here:

1. The overruling of a Motion for Directed Verdict.

2. Mother Beryl objected to certain instructions given to the jury.

In the previous appeal to this court, reported as *Doctor* v. *Fort Wayne National Bank* (1968), 143 Ind. App. 69, 238 N. E. 2d 289, we reversed on the sole grounds of the presence of a mandatory instruction prejudicial to Mother Beryl. There was no treatment or even mention by the court as to the propriety of overruling of the Motion for a Directed Verdict on the grounds indicated.

The case was then remanded without an order for new trial to the Allen Superior Court No. 1, and venue was subsequently changed to Whitley Circuit Court. No further pleadings were filed, nor any evidence introduced until November 12, 1969, when Mother Beryl filed a Motion for Summary Judgment. After considering the Motion and accompanying Affidavits, including a verified transcript of the former trial, the court granted the summary judgment in favor of Mother Beryl.

*ISSUES*—Two questions must be decided:

I. Is the doctrine of the "law of the case" a barrier to the lower court ruling on the Motion for Summary Judgment in favor of Mother Beryl?

II. Did the trial court properly grant summary judgment on the grounds that, as a matter of law, the facts in this case preclude recovery under the social guest rule?

I. Plaintiff-Bank argues that under the Indiana doctrine of "law of the case," the Motion for Summary Judgment should have been denied because we reversed the original appeal on grounds of an improper instruction and therefore we had to assume that the directed verdict was correctly overruled. Thus, by implication this court held there was sufficient

evidence to take the question of Mother Beryl's liability to a jury.

Mother Beryl says the "law of the case" only applies to matters which were expressly decided by the court on appeal and no implication arises as to any other questions not so decided.

II. Plaintiff-Bank admits *arguendo* that Maria was a social guest and acknowledges a landowner is only liable to a social guest for injury sustained as a result of a hidden defective condition which the landlord does or should have knowledge of and fails to warn the guest. There are exceptions, though, it is argued, where:

1. the landowner makes use of the social guest as a domestic helper;
2. the landowner maintains the premises in a defective and dangerous condition and sends the social guest into known danger without warning.

Mother Beryl's position is that Maria was a licensee by permission and, therefore, takes the premises as she finds them as to any defects thereon, and, further, that Maria had knowledge of any defects existing in connection with the basement stairs and that if any negligence occurred at all it was of a "passive character."

## DECISION

I. It is our conclusion that the Motion for Summary Judgment was properly granted, because "the law of the case" does not include questions which were not decided but which might have been decided in a previous appeal.

As early as 1902, *Wine* v. *Woods* (1902), 158 Ind. 388, 63 N. E. 759, held that "only points decided become the law of the case." Such questions which might have been but were not considered or decided in the first and prior appeal do not become the law of the case. Since *Wine* v. *Woods* was decided,

this statement of the law has been followed by various Indiana cases—*Evansville American Legion Home Ass'n* v. *White*, (1967), 141 Ind. App. 574, 230 N. E. 2d 623; *Egbert* v. *Egbert et al.* (1956), 235 Ind. 405, 132 N. E. 2d 910; *Alerding* v. *Allison* (1908), 170 Ind. 252, 83 N. E. 1006. In the *Egbert* case, our Supreme Court criticized past Indiana decisions which did not specifically limit the rule of law in the case to questions actually or expressly decided in a previous appeal and claimed the rule to be as set forth in the *Wine* case.

Therefore, this court, by failing in the previous appeal to consider the error raised by the motion for directed verdict, did not create an implication that sufficient evidence existed as to Maria's cause of action as a social guest. The previous appeal simply did not decide this question, and "the law of the case" is no barrier to a motion for summary judgment.

II. In our opinion the trial court properly granted summary judgment because Maria was a social guest who took the premises as she found them.

The duty owed by an owner or occupant of land to one coming on the premises depends largely on the relationship between them. *Standard Oil Co. of Ind., Inc.* v. *Scoville* (1961), 132 Ind. App. 521, 175 N. E. 2d 711 (*transfer denied*). In Indiana a person who enters the premises of another for his own convenience, curiosity, or entertainment is a licensee by permission or a mere licensee, and a social guest falls into this category. *East Hill Cemetery Co.* v. *Thompson* (1912), 53 Ind. App. 417, 97 N. E. 1036; *Olson* v. *Kushner* (1965), 138 Ind. App. 73, 211 N. E. 2d 620; *Brown* v. *Kujawa* (1968), 142 Ind. App. 310, 234 N. E. 2d 509.

This is the law elsewhere. "If plaintiff is a social guest in defendant's home, the great weight of Anglo-American authority classifies him as a bare licensee, even though he was expressly invited." Harper and James, *The Law of Torts*, Vol. 2, § 27.11, p. 1477.

This being so, what duty is owed by the owner or occupant to the social guest? The answer varies from jurisdiction to

jurisdiction, but there is unanimity among them in holding that a social guest injured by a defect in the premises may not recover against his host in the absence of evidence establishing something *more* than negligence in the maintenance of the premises. (See 25 ALR 2d 599; 65 C.J.S. *Negligence,* § 63(32). Most courts, in holding a host liable to a social guest, having used such standards as active negligence,[1] gross negligence,[2] and wilful and wanton conduct.[3] This departure from the use of the negligence concept[4] has been justified by equating the legal liability of hosts with that of "homely hospitality, [the courts] saying that the host should treat the guest as a member of the family, and the guest, on the other hand, should accept the conditions ordinarily prevalent in his host's home without cavil or complaint." (See 25 ALR 2d 600 and cases cited.)

Whatever reasons there may be for applying different standards of conduct by owners or occupiers of land to social guests, we can state with certainty that in Indiana a social guest as a mere licensee takes the premises as he finds them and the owner is not liable for any defects in the condition thereof. *Millspaugh, Admr.* v. *Northern Ind. Pub. S. Co.* (1938), 104 Ind. App. 540, 12 N. E. 2d 396; *Samuel E. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 39 N. E. 2d 812. We can even go so far as to conclude from the holdings in the *Pentecost* and *Millspaugh* cases, *supra, Brown* v. *Kujawa* (1968), 142 Ind. App. 310, 234 N. E. 2d 509, and *Faris* v. *Hoberg* (1892), 134 Ind. 269, 33 N. E. 1023, that an owner or occupant of land has no duty toward a social guest to maintain the premises in a safe condition. This is not to say, however, that the owner or occupant has absolutely no duty whatsoever to a social guest. To determine

1.  *Cunag* v. *McCarthy,* (1963) 42 Ill. App. 2d 36, 191 N. E. 2d 404.
2.  *Smith* v. *Allen,* (1961) (CA-4 Va.) 297 F.2d 235.
3.  *Simpson* v. *Richmond,* (1957) 154 Cal. App. 2d 27, 315 P. 2d 435.
4.  Louisiana applies the negligence standard to host-social guest situations. See *Crittenden* v. *Fidelity & Casualty Co.,* (1955) (La. App.) 83 So. 2d 538.

what positive duty an owner or occupant has to a social guest (licensee) involves consideration of cases in both the Supreme and Appellate Courts applying different standards to licensees. It is at this point that the law in Indiana becomes snarled.

One of the earliest cases is *Woodruff, Administratrix* v. *Bowen* (1893), 136 Ind. 431, 34 N. E. 1113, where the court held that the owner owes the mere licensee no duty except that of abstaining from any positive wrongful act which may result in injury and that the licensee takes all risks as to the safe condition of the premises upon which he enters.

Five years later the Supreme Court, again considering the question, decided the case of *Barman* v. *Spencer* (1898), (Ind.) 49 N. E. 9, holding that the owner or occupant owed the licensee only a duty of refraining from acts which would constitute *gross negligence*.

Following the *Barman* case, the Supreme Court, in *Lingenfelter* v. *Baltimore, etc., R. Co.* (1900), 154 Ind. 49, 55 N. E. 1021, held that the owner owed no duty to the mere licensee, but "[O]f course, this rule [the court said] is subject to the exception that the licensor must not *wilfully or wantonly* cause the injury to the licensee."[5] (Emphasis supplied.) The *Lingenfelter* case was specifically followed in *Cannon* v. *Cleveland, etc., R. Co.* (1901), 157 Ind. 682, 62 N. E. 8, and cited in several other cases thereafter.

Then this court, some years later, in 1915, decided *Cleveland, etc., R. Co.* v. *Means* (1914), 59 Ind. App. 383, 104 N. E. 785 (*transfer denied*), where it held that, in speaking of a licensee by permission: "Such a person takes the premises as he finds them as to any defects therein, and the owner is not liable for any injuries resulting to him owing to defects in the conditions of the premises. *He is not liable for passive negligence.*" (Emphasis supplied.) (Citing *Lingenfelter* v. *Baltimore, etc., R. Co., supra.*) *Cleveland, etc., R. Co.* v. *Means, supra,* then and there spawned a line of cases applying the

---

5. *Brown* v. *Kujawa, supra,* impliedly followed this standard. (See p. 312 of the opinion.)

standard of active or passive negligence to mere licensees, including social guests, the last of which cases was *Olson* v. *Kushner, supra.* Analysis reveals that *Cleveland* did more than debauch the principle of wilfulness or wantonness enunciated in *Lingenfelter.* It begat a new doctrine—liability of an owner to a licensee in terms of "passive or active negligence."

Even more incongruous is the opinion written by this court in *Millspaugh, Admr.* v. *Northern Ind. Pub. S. Co.* (1938), 104 Ind. App. 540, 12 N. E. 2d 396, where the court cites *Cleveland* in support of a standard of passive negligence and in the same opinion also cites *Lingenfelter,* which applies the wilful and wanton standard.

The most recent comment on this subject by our Supreme Court is found in *Pier* v. *Schultz et al.* (1962), 243 Ind. 200, 182 N. E. 2d 255. Although it was primarily concerned with a fact situation covering the attractive nuisance doctrine, in speaking of a licensee the court said:

> "Since it is not alleged that the instrumentality, of which appellant complains, was of such character that its presence upon the property of appellees created a condition comparable to an entrapment, and since it is not alleged that the appellees, as owners of the property, committed any positive act or exercised any positive control over the instrumentality, regardless of its character, and since it affirmatively appears from the complaint that the person injured was either a trespasser or a mere licensee by permission upon the property of appellees, the complaint does not state facts sufficient to constitute a cause of action under the general rules of negligence." (243 Ind. at 204.)

The court footnoted *Woodruff, Administratrix* v. *Bowen, supra,* which originally applied the positive wrongful act standard to a licensee by permission.

From this entanglement, several threads may be easily separated.

First, insofar as a standard of *gross negligence* is embraced in *Barman v. Spencer, supra,* this case seems to be rendered

impotent by a long line of cases holding that under the common law of Indiana there cannot be degrees of negligence. It is probably overruled by implication, and we now give credence to that implication. See *Indiana Ins. Co.* v. *Handlon* (1940), 216 Ind. 442, 24 N. E. 2d 1003; *Thompson* v. *Ashba* (1951), 122 Ind. App. 58, 102 N. E. 2d 519; *Vandalia R. Co.* v. *Clem* (1911), 49 Ind. App. 94, 96 N. E. 789.

Another strand of the snarl which may be isolated and disposed of is the standard of active and passive negligence originating in *Cleveland, etc., R. Co.* v. *Means, supra,* and followed in *East Hill Cemetery Co.* v. *Thompson, supra, Millspaugh, Admr.* v. *Northern Ind. Pub. S. Co., supra, Thistlewaite* v. *Heck* (1920), 75 Ind. App. 359, 128 N. E. 611, and *Olson* v. *Kushner, supra.* This line of decisions is inconsistent with the holdings of our Supreme Court on the same subject, violates the prohibition against degrees of negligence, and created an *undefined negligence doctrine* where no logical basis exists for so doing. Insofar as they or any other cases apply a standard of active and/or passive negligence to a social guest as a mere licensee to determine the liability of the host, they are hereby overruled.

In taking this position, we are aware that it could be argued that the words "active" and "passive" denote types of negligence rather than degrees of negligence, but this argument is too fine-spun to do anything more than add to the existing confusion in this area of the law.

Recognizing that the active-passive negligence standard is in direct conflict with rules previously adopted by the Supreme Court *(Lingenfelter* v. *Baltimore, etc., R. Co., supra; Woodruff, Administratrix* v. *Bowen, supra; Pier* v. *Schultz et al., supra),* we leave it to that court at the appropriate time to determine the exact duty owed by an owner or occupant to a social guest beyond what has already been decided.

By this process of partial disentanglement we now find ourselves bound to apply, first, the "positive wrongful act" test

*(Woodruff, Administratrix* v. *Bowen, supra);* second, the "wilful and wanton" test *(Lingenfelter* v. *Baltimore, etc., R. Co., supra);* and third, the "entrapment-affirmative control of the instrument" test *(Pier* v. *Schultz et al., supra).* All three of these tests have a common element of wilfulness on the part of the owner toward the social guest.

As indicated above, we do not undertake to decide which standard is most desirable or exactly what constitutes the duty of the landowner to the social guest, but we do determine that whatever test may be applied to the facts of this case, there can be no liability attributed to Mother Beryl for the death of Maria, who took the premises with any defects thereon as she found them. This is so whether Maria be considered a member of Mother Beryl's family or a social guest.

Maria was well aware of the condition of the stairs in Mother Beryl's home. She had been in the home on previous occasions; at times did her washing in the basement; and assisted in serving meals in the basement on the day of the fatal accident, traveling up and down the stairs at various times prior thereto. Maria *freely* joined Mother Beryl in the preparation and serving of the meals.

Even if the condition of the stairs described in the Complaint amounted to a defect or a trap therein, such defects were readily apparent or discernible to Maria. Under these circumstances Maria was not sent into a known dangerous situation without a warning. Entrapment cannot exist where the victim or injured party has full knowledge of the condition and circumstances of the premises. *Pier* v. *Schultz et al., supra.*

The Bank seeks to take this case out of the category of a licensee by permission by claiming an exception exists where the landowner makes use of the social guest as a domestic helper. It is true that Maria assisted Mother Beryl in preparing the afternoon and evening meals eaten in the basement. But that fact alone does not alter Maria's status as a licensee by permission.

While our research does not disclose any Indiana cases in point, other jurisdictions have held, and we now adopt the rule that a social guest remains a licensee by permission notwithstanding the fact that, at the time of the injury, the guest was carrying out or performing a minor task for the occupant or owner of the property. *Ciaglo* v. *Ciaglo* (1959), 20 Ill. App. 2d 350, 156 N. E. 2d 376; *O'Brien* v. *Shea* (1951), (Mass.), 96 N. E. 2d 163; *Wilson* v. *Bogert* (1959), (Idaho), 347 P. 2d 341; *Ladenson* v. *Eder* (1967), (Fla.), 195 So. 2d 211.

Thus, as a matter of law, the trial court could find that there was an absence of any action on the part of Mother Beryl which would constitute either a positive wrongful act or wilful or wanton misconduct or conduct which would amount to entrapment. Maria died in the service of her family, a victim of circumstances for which no liability attaches.

The Bank places great emphasis upon statements of this court concerning summary judgment in personal injury cases where a standard of negligence is applied. See *Wozniczka* v. *McKean* (1969), 144 Ind. App. 471, 247 N. E. 2d 215. Also see Barron and Heltzoff, *Federal Practice and Procedure* (Wright ed.), Vol. 3, §§ 1232.1 and 1235. As we have indicated, the law of negligence is not relevant to the host-social guest relationship. *Wozniczka* properly concerned itself with the problems of what constitutes reasonable ness of conduct in circumstances where a determination is being made of what constitutes negligence. Here we are considering conduct which transcends negligence as that term is established by Indiana law. Even with *Wozniczka* in mind, the record before us clearly indicates the absence of any genuine issue of fact or inferences therefrom.

Therefore, the summary judgment must stand, and the action of the trial court is hereby affirmed.

Sullivan, P.J., Lowdermilk and Robertson, JJ., concur.

Note.—Reported in 272 N. E. 2d 876.